UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 0:24-cv-61734-MD

JENNIFER HEATH BOX,

        Plaintiffs,

v.

BROWARD COUNTY SHERIFF GREGORY TONY, in his official capacity; COUNTY SHERIFF'S DEPUTY PETER PERAZA; BROWARD COUNTY SHERIFF'S DEPUTY MONICA JEAN; BROWARD COUNTY SHERIFF'S DEPUTY JASMINE HINES; and BROWARD COUNTY SHERIFF'S DEPUTY ANTHONY THORPE,

        Defendants.
_____/

## DEFENDANTS' JOINT MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. L.R. 7.1, Defendants, GREGORY TONY, etc. (Sheriff), DEPUTY PETER PERAZA, DEPUTY MONICA JEAN, DEPUTY JASMINE HINES, and DEPUTY ANTHONY THORPE (collectively Deputies), by and through their respective undersigned counsel, move to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted, and as grounds state:

**I.  Introduction**

    **A.  Factual Allegations**

On December 24, 2022, the Deputies arrested Plaintiff pursuant to a lawful warrant. [ECF 25, ¶¶ 26-32]. Plaintiff claims that some of the information

1

did not match her identifying features. Id. Yet, Plaintiff admits that the warrant was for a similarly-named individual "Jennifer Delcarmen Heath" and included "[Plaintiff's] driver's license photo." [ECF 25, ¶¶ 32, 173]. Plaintiff spent 75 hours in detention and was then released when BSO confirmed the warrant wrongly included her picture and applied to a different Jennifer Heath. [ECF 25, ¶ 5].

### B.    Plaintiff's alleged claims

Plaintiff has sued the Deputies under 42 USC § 1983 for unreasonable seizure and detention in violation of the Fourth Amendment [ECF 25, Count I] and deprivation of liberty in violation of the Fourteenth Amendment [ECF 25, Count II].

Plaintiff has sued the Sheriff under 42 USC § 1983 for unreasonable seizure and detention in violation of the Fourth Amendment [ECF 25, Count III] and deprivation of liberty in violation of the Fourteenth Amendment [ECF 25, Count IV]. [ECF 25, Count IV].

## II.   Applicable law

### A.    Motions to dismiss, generally

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937, 1949 (2009), citing *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 570; 127 S.Ct. 1955, 1974 (2007); *Hammer v. Sorenson*, 824 Fed. Appx. 689, 692 (11th Cir. 2020).

## III.  Motion to dismiss and incorporated memorandum of law

### A.    Counts I and III— 42 U.S.C. §1983–Unreasonable Seizure

Plaintiff sued Defendants for a mistaken arrest under the Fourth

Amendment. In *Rodriguez v. Farrell*, 280 F.3d 1341, 1346 (11th Cir. 2002), the Eleventh Circuit explained that:

> In *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), the Supreme Court determined, in a criminal case, whether the mistaken arrest of one person (for whom no probable cause existed) based upon the misidentification of that person as a second person (for whom probable cause to arrest existed) violated the Constitution. **The Court concluded 'no,' writing that '[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest**.'
>
> The same 'reasonable mistake' standard applies (1) in the context of a section 1983 action and (2) when the police have a valid warrant– as opposed to just probable cause–to arrest someone, but mistakenly arrest someone else due to a misidentification.

*Rodriguez,* 280 F.3d at 1346 (cleaned up).

The Eleventh Circuit went on to find in *Rodriguez* that notwithstanding some differences between the plaintiff and the individual named in the warrant, including a **five inch height difference**, those differences did not equate to an unreasonable mistake such that no constitutional violation had occurred. "Arresting police officers need not act as judges determining ultimate facts …. There are limits on how much independent investigating an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity...The question is not whether the police could have done more; but whether they did just enough." *Id.* at 1353, nt. 15. (internal citations omitted). Moreover, an arresting officer is "not obligated to accept plaintiff's statements [of mistaken identity] as true." *Id.*; see also *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Pickens v. Hollowell*, 59 F.3d 1203, 1208 (11th Cir.1995) (explaining that officers need not

3

investigate independently every claim of innocence"); *Frasier v. McCallum*, 2016 WL 3545793 (N.D. Fla. 2016); *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1153 (S.D. Fla. 2006).

*Sub judice*, the amended complaint affirmatively establishes that no constitutional violation occurred: a valid warrant existed and it included an actual picture of Plaintiff and a similar name. Consequently, the complaint fails to state a claim for violation of the Fourth Amendment. *Rodriguez, Hill, Baker, supra*. Counts I and III should be dismissed.

**B.     Counts II and IV— 42 U.S.C. §1983–Arbitrary Deprivation in Violation of the Fourteenth Amendment**

Plaintiff claims that it is "arbitrary to detain someone because they have the same name as a criminal suspect." [ECF 25, ¶ 269]. Both the United States Supreme Court and the Eleventh Circuit have rejected similar claims and found no constitutional violation under strikingly similar facts. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979) (holding that a detention due to mistaken identity "gives rise to no claim under the United States Constitution" when it lasts only "three days" and is "pursuant to a warrant conforming ... to the requirements of the Fourth Amendment."); *Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1300–01 (11th Cir.), cert. denied sub nom. *Sosa v. Martin Cnty.*, 144 S. Ct. 88, 217 L. Ed. 2d 19 (2023) ("*Baker* controls this case… Sosa was arrested on a valid warrant and held for only three days. So, under *Baker*, Sosa's complaint did not state a claim for a violation of his due-process rights.")

In *Baker,* Leonard McCollan "procured" a driver's license that **bore his**

4

**own picture** but, in all other respects, the information of his brother, Linnie. 443 U.S. at 140. "Leonard, masquerading as Linnie, was arrested ... on narcotics charges," "booked as Linnie," and "released on bail as Linnie ...." *Id.* at 140–41. Leonard violated the terms of his bond and an arrest warrant was issued for Linnie. *Id.* at 141. When Linnie ran a red light, the police checked his driver's license, discovered the warrant, and arrested him, despite his protests of mistaken identity. *Id.* On Saturday, December 30, 1972, the defendants took custody of Linnie "until [Tuesday,] January 2, 1973, when officials compared his appearance against a file photograph of the wanted man and, recognizing their error, released him." *Id.* Linnie later filed a civil-rights action alleging a violation of the Fourteenth Amendment. *Id.* After the Fifth Circuit reversed a directed verdict against Linnie on the theory that the police must "mak[e] sure that the person arrested and detained is actually the person sought under the warrant," *McCollan v. Tate*, 575 F.2d 509, 513 (5th Cir. 1978), the Supreme Court reversed and held that he had no constitutional right not to be detained for three days:

> Absent an attack on the validity of the warrant under which he was arrested, respondent's complaint is simply that despite his protests of mistaken identity, he was detained ... from December 30 ... until January 2, when the validity of his protests was ascertained. Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution.

Id. at 143–44, 99 S.Ct. 2689.

The *Baker* Court rejected Linnie's over-detention claim based on its consideration of only two criteria: the validity of Linnie's arrest warrant and the length of his detention. *Id.* The Court recognized that Linnie was "deprived of his liberty for a period of days," which spanned four days/three nights from

5

Saturday to Tuesday. And it recognized that his detention was "pursuant to a warrant conforming … to the requirements of the Fourth Amendment." *Id.* at 144, 99 S.Ct. 2689. It concluded based on these two facts that Linnie had no cognizable Fourteenth Amendment claim for over-detention.

As the Court explained, any other conclusion would read too much into the constitutional guarantee of due process. The Constitution does **not** guarantee that innocent people will never be arrested, so a detainee's claims of innocence are "largely irrelevant." *Id.* at 145. Nor does the Constitution guarantee that officers will "investigate independently every claim of innocence … based on mistaken identity." *Id.* at 146. When officers do investigate, the Constitution does not guarantee an "error-free investigation." *Id.* And regardless of whether errors are made, the Fourteenth Amendment is not a constitutional bulwark against a few-days detention, "[g]iven the requirements that arrest be made only on probable cause [under the Fourth Amendment] and that one detained be accorded a speedy trial [under the Sixth Amendment.]" *Id.* at 145.

Similarly, in *Sosa*, on Friday, April 20, 2018, a deputy sheriff checked the plaintiff's driver's license during a traffic stop and found a Texas warrant. 57 F.4th at 1299. The plaintiff objected that the identifiers listed on the warrant did not describe him. *Id.* The plaintiff also told the deputies about a prior misidentification in 2014 on the same warrant. *Id.* Deputies arrested the plaintiff and brought him to the Martin County jail, where, despite the plaintiff's continued insistence to deputies and jailers that he was not the wanted man, his detention lasted three days over a weekend. *Id.* On Monday, April 23, 2018, the fourth day, the plaintiff was fingerprinted, and the sheriff's department released

6

him after the fingerprints confirmed that the warrant was for a different man. In rejecting a Fourteenth Amendment due process claim, the Eleventh Circuit stated:

> And as the *Baker* Court was "quite certain that [Linnie's] detention of three days over a New Year's weekend does not and could not amount to such a deprivation," *id.*, we are sure that Sosa's commensurate three-day detention did not violate the Fourteenth Amendment. We need not go any further.

*Id.* at 1301.

*Baker* and *Sosa* compel dismissal here. No violation of due process occurs if a detainee's arrest warrant is valid and her detention lasts an amount of time no more than the three days that Plaintiff was detained. Counts III and IV should be dismissed.

## C. Qualified immunity also bars Counts I and II

Qualified immunity bars the 42 U.S.C. § 1983 claim(s) asserted against Defendants regardless. The defense of qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730 (2002). The purpose of qualified immunity is to "allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 248 F. 3d 1188, 1194 (11th Cir. 2002) (since qualified immunity also endows officials with protection from suit, courts must evaluate the validity of the qualified immunity defense "as early in the lawsuit as possible"). This doctrine

7

protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* It applies "regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To obtain qualified immunity, a defendant must establish that he was acting within his discretionary authority when the alleged violation occurred. *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). To determine whether qualified immunity exists, a court must evaluate (1) whether a plaintiff has alleged a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the official's conduct. *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010). Further, to determine whether an official was performing a discretionary duty, the court must consider two issues: (1) whether the official was performing a legitimate job-related function and (2) whether the official conducted that function through means that were within his power to utilize. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

To determine whether a right was clearly established at the time of the alleged violation, the court must consider "whether it would be clear to a reasonable [governmental official] that his conduct was unlawful in the situation he confronted." *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013); see also *Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003). In the Eleventh Circuit, qualified immunity is the rule rather than the exception. *Lassiter v. Alabama A&M Univ.*, 28 F. 3d 1146 (11th Cir. 1994) (en banc).

*Sub judice,* as stated above, the amended complaint fails to allege a violation of a constitutional right. *Baker, Sosa, Rodriguez,* supra. Hyperbolic rhetoric and inflammatory accusations aside, the complaint likewise fails to establish that Defendants knowingly violated any purported constitutional right or acted incompetently in connection with any decisions or actions they took with respect to any issue in the complaint. At all relevant times, the complaint establishes that Defendants were legitimately acting in accord with their job-related duties. *Id.* Counts I and II should be dismissed.

D.     **Counts III and IV - No custom and policy**

The Sheriff can only be liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . ." of which Plaintiff complains. *Monell v. Dep't. of Social Services, etc.*, 436 U.S. 658, 691 (1978); *Mercado v. City of Orlando,* 407 F.3d 1152 (11th Cir. 2005); *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997).

To establish custom-based liability, Plaintiff must allege facts establishing an unconstitutional practice so widespread that, "although not authorized by written law or express [ ] policy," is "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale,* 923 F. 2d 1474, 1481 (11th Cir. 1991). The allegations must reflect

9

a practice so "longstanding and widespread," that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id.* But "random or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Mary's*, 787 F. 2d 1496, 1499 (11th Cir. 1986); *Owaki v. City of Miami*, 491 F. Supp. 2d 1140, 1158 (S.D. Fla. 2007).

Plaintiff's amended complaint includes insufficient allegations of other incidents upon which a "custom" could be established. Plaintiff conclusorily alleges that there are "at least two other publicly reported incidents" against the Sheriff alleging mistaken arrests. [ECF 25, ¶ 293]. But mere allegations of wrongdoing against the Sheriff do not establish an unconstitutional custom or policy. See, e.g., *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir.1987) (noting how the plaintiff "never demonstrated that past complaints of police misconduct had any merit" and explaining that "the number of complaints bears no relation to their validity"); *Ludaway v. City of Jacksonville*, Fla., 245 F. App'x 949, 951–52 (11th Cir. 2007) (no custom or policy where only 10 out of 170 excessive force complaints lodged to the defendant's police department were sustained).

Indeed, "generally, a plaintiff must show multiple similar, past, **meritorious** complaints against a police force to prove a custom condoning excessive force." *White v. City of Birmingham, Ala.*, 96 F. Supp. 3d 1260, 1282 (N.D. Ala. 2015), as amended (May 27, 2015) (emphasis added), citing *Mercado*, 407 F. 3d at 1162 and *Ludaway*, 245 F. App'x at 952; see also *Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) (explaining "where a plaintiff relies on a pattern of complaints of unconstitutional conduct to show a custom, the complaints must have merit" and that "merely identifying complaints of excessive

force does not establish the merits of the same").

In sum, Plaintiff has tendered no facts establishing a Sheriff policy or custom as the "moving force" behind Plaintiff's alleged constitutional deprivation as required by *Monell*, supra. Counts III and IV fail to state a viable "official policy or custom" claim against the Sheriff and the claims must be dismissed.

WHEREFORE, Defendants, GREGORY TONY, etc., DEPUTY PETER PERAZA, DEPUTY MONICA JEAN, DEPUTY JASMINE HINES, and DEPUTY ANTHONY THORPE, respectfully request the entry of an order dismissing the amended complaint for failure to state claims upon which relief can be granted.

### Certificate of Service

WE CERTIFY that on this 10th day of February 2025, we electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. We further certify that we either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non-CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

*/s/ Christopher J. Stearns*
Michael R. Piper
Fla. Bar No. 710105
Christopher J. Stearns
Fla. Bar No. 557870
JOHNSON, ANSELMO, MURDOCH
BURKE, PIPER & HOCHMAN, P.A.
***Attorneys for Defendants***
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304
Tel: 954.463.0100
Fax: 954.463.2444
piper@jambg.com / cintron@jambg.com
andrews@jambg.com
stearns@jambg.com / young@jambg.com

11

**SERVICE LIST**

**Karin Marquez, Esq. (1024765)**
Institute for Justice
**Attorneys for Plaintiff/Petitioner**
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
Tel: 305.721.1600
kmarquez@ij.org

*Pro-Hac Vice*
**Jared A. McClain, Esq. (DC: 1720062)**
**Bobbi M. Taylor, Esq. (NJ: 435162023)**
Institute for Justice
**Attorneys for Plaintiff/Petitioner**
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: 703.682.9320
jmcclain@ij.org
btaylor@ij.org

---

**Michael R. Piper, Esq.**
**Christopher J. Stearns, Esq.**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
**Attorneys for BSO**
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Tel: (954) 463-0100
Fax: (954) 463-2444
piper@jambg.com / stearns@jambg.com